# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

```
_____
                                )
SPINDRIFT BEVERAGE CO., INC.,    )
                                )
            Plaintiff,           )
                                )      CIVIL ACTION NO. 1:15-CV-14195
        v.                       )
                                )
SMALL WORLD WINE COMPANY, LLC.,  )
                                )
            Defendant.           )
                                )
_____ )
```

## COMPLAINT

Plaintiff Spindrift Beverage Co., Inc. hereby seeks relief from this Court from the unlawful conduct of Defendant Small World Wine Company, LLC.  As alleged herein, Defendant, a wine manufacturer and distributor located in Oregon, has willfully and maliciously breached a Consent Agreement executed by the parties in 2010 which governed Plaintiff's use of the tradename SPINDRIFT and the trademarks SPINDRIFT and SPINDRIFT SODA.  By the plain and unambiguous language of the Consent Agreement, Defendant expressly consented  to Plaintiff's use of the SPINDRIFT mark and to its use and registration of the SPINDRIFT SODA mark in connection with the marketing, distribution, and sale of Plaintiff's carbonated beverage products.  Plaintiff has fully complied with the two specific use restrictions set forth in the Consent Agreement, and has consistently communicated with Defendant about its use of the SPINDRIFT marks on its expanding product line, all without a single complaint or objection from Defendant.  Despite its compliance with the Agreement, Defendant served Plaintiff with a cease and desist letter on May 28, 2015, without justification or provocation, complaining for the first time of specific uses and activities that were expressly permitted under the Consent

Agreement and/or of which Defendant had prior knowledge.  In response, Plaintiff attempted to engage Defendant in good faith discussions to explore reasonable steps to address Defendant's concerns.  Defendant instead demanded the immediate and total cessation of Plaintiff's use of all SPINDRIFT marks and threatened formal trademark cancellation proceedings before the United States Patent and Trademark Office Trademark Trial and Appeal Board ("TTAB") if Plaintiff refused to enter into a multimillion dollar licensing arrangement with Defendant for the very uses of the SPINDRIFT marks that are already allowed by the Consent Agreement.  Despite Plaintiff's efforts to find a resolution consistent with the terms of the Consent Agreement, Defendant filed the cancellation proceeding with the TTAB on November 17, 2015.  Defendant's foregoing conduct not only expressly violates the terms of the Consent Agreement, but, as articulated more fully below, subjects Defendant to liability for breach of contract, breach of implied covenant of good faith and fair dealing, violation of M.G.L., c. 93A, specific performance and estoppel.

## PARTIES

1.     Plaintiff Spindrift Beverage Co., Inc. ("Plaintiff") is a corporation organized under the laws of the State of Delaware.  Plaintiff is registered to do business within the Commonwealth of Massachusetts and has a principal place of business at 260 Charles Street, Waltham, Massachusetts.

2.     Defendant Small World Wine Company, LLC ("Defendant") is a limited liability company with a principal place of business in Philomath, Oregon.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because this lawsuit involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      Venue in this district is proper in accordance with 28 U.S.C. § 1391(a).

## FACTS

5.      Originally formed and organized under the name Spindrift Soda, LLC, Plaintiff has been in operation since February 2010.  In or about December 2012, Spindrift Soda, LLC, was merged into a Delaware limited liability company, Spindrift Beverage Co., LLC, which entity, in turn, was merged into Spindrift Beverage Co., Inc., in or about April 2014.

6.      At all relevant times, Plaintiff has been in the business of producing, marketing, distributing and selling juice-based carbonated beverages and waters under the trademarks SPINDRIFT and SPINDRIFT SODA.  All of Plaintiff's products are carbonated beverages; Plaintiff markets and sells its sweetened, carbonated beverages as Spindrift Soda, and its unsweetened, carbonated beverages as Spindrift Seltzer.

7.      Defendant is a coalition of small wineries from Willamette Valley, Oregon, that manufactures, markets and distributes its own wines under the name SPINDRIFT CELLARS, among others.  Defendant obtained the federal registration for the SPINDRIFT CELLARS mark on May 27, 2008.

8.      Defendant operates a company website that permits customers to consummate electronic transactions for the purchase of wine products sold by Defendant.  *See, e.g., http://spindriftcellars.orderport.net/wines/Gift-Packs.*  Through its website, customers and other potential consumers also are able to register to receive periodical emails from Defendant concerning special events, new wines, and sales, through a website form that requires the

3

submission of an individual's name and contact information.  Defendant also maintains various social media sites through which its customers and other consumers can directly interact with Defendant and receive information about Defendant's business.

9.      On or about February 23, 2010, Plaintiff's predecessor-in-interest filed Application Serial Number 77942229 to register the mark "SPINDRIFT SODA" with the United States Patent and Trademark Office ("USPTO").   The "SPINDRIFT SODA" Application received an Office Action on June 3, 2010 preliminarily refusing registration based on likelihood of confusion with the registration for SPINDRIFT CELLARS, covering alcoholic beverages of fruit, owned by Defendant.

10.     In June 2010, Plaintiff contacted Defendant to explore the prospect of obtaining Defendant's consent to Plaintiff's use and registration of the SPINDRIFT SODA mark and Plaintiff's use of the SPINDRIFT mark.  Plaintiff explained the company's "fresh soda" concept using only natural ingredients, and highlighted the vast differences between both the parties' respective products and the specific marks under which each would sell them.

11.     In the weeks and months that followed, the parties compared and contrasted the nature and character of their respective products, exchanged samples of the SPINDRIFT, SPINDRIFT SODA and SPINDRIFT CELLARS marks, and specifically contemplated the extent to which the concurrent use of the parties' marks might potentially cause consumer confusion in the marketplace.   As part of the process, Plaintiff sent Defendant samples of its carbonated beverage products, each of which bore the SPINDRIFT mark and label being used by Plaintiff.  Defendant acknowledged receipt of Plaintiff's products and even expressed an interest in offering Plaintiff's products to its customers as a non-alcoholic alternative at wine tastings.

Attached hereto as Exhibit A are images of the sample products and labels that were sent by Plaintiff to Defendant in August 2010.

12.     At the conclusion of this process, which included consultation with their respective legal counsel, the parties specifically and explicitly agreed that the nature of the goods sold under their respective marks were distinctly different and unlikely to be considered derived from the same source.

13.     On or about August 19, 2010, Plaintiff and Defendant executed a written Consent Agreement, memorializing their agreement that neither Plaintiff's use of its SPINDRIFT mark nor Plaintiff's use and registration of the SPINDRIFT SODA mark was likely to cause consumer confusion with the SPINDRIFT CELLARS mark.  Attached hereto as Exhibit B is a true and accurate copy of the fully-executed Consent Agreement, with attachments.

14.     The Consent Agreement expressly provides for the authorized use and registration of the SPINDRIFT SODA mark on the USPTO's principal register for the goods specified; namely, soft drinks and carbonated soft drinks, enhanced with fresh fruit juice, vitamins, minerals, nutrients, amino acids, herbs, aerated water, soda water and seltzer water.  It states, in pertinent part, that:

> [Defendant] hereby consents to the use and registration of the trademark SPINDRIFT Soda, Serial No. 77942229, a copy of which is attached hereto, by  Spindrift Soda, LLC ("Applicant") for the following goods:  *Soft drinks and carbonated soft drinks, enhanced with fresh juice, vitamins, minerals, nutrients, amino acids and/or herbs, aerated water, soda water and seltzer water* …
>
> See Exhibit B.

15.     The Consent Agreement also expressly provides for the authorized use by Plaintiff of the SPINDRIFT mark that is attached to the Agreement as an exhibit, in connection with Plaintiff's products.  See Exhibit B.

5

16.     To avoid any miscommunication or confusion, the parties expressly stated the basis underlying these consents.  The parties expressly agreed that:

> the basis for this consent is [Plaintiff's] and [Defendant's] mutual determination that there is no likelihood that consumers have been or will be confused by the use and registration of the two marks under the terms set forth above.  This is supported by the fact that to date there have been no instances of confusion.  In addition, the nature of the goods offered and sold by the parties under their respective marks, ***as evidenced by the specimens submitted herewith***, are used in such a  manner and distinctly different and unlikely to be considered derived from the same source that use thereof is not likely to cause confusion.   (Emphasis added.)

> <u>See</u> Exhibit B.

17.     The following Spindrift mark is referred to within the Consent Agreement, and attached as an exhibit thereto:



18.     The Consent Agreement also sets forth certain restrictions upon Plaintiff's use of the SPINDRIFT marks, providing that consent would continue only to the extent that:

(1) Plaintiff's products remain non-alcoholic and never migrate into Defendant's competitive marketplace as wine coolers or any other type of alcoholic beverage, and (2) Plaintiff's labels and other marketing materials remain distinctive from those used by Defendant.

See Exhibit B.

19.     Finally, the Consent Agreement states that:

In order to carry out this consent agreement, the parties agree to continue to cooperate in taking reasonable action to avoid confusion and to correct any instances or likelihood of confusion which comes to their attention.

See Exhibit B.

20.     Plaintiff began its operations in 2010 manufacturing, producing and selling four different soda products – Blackberry, Lemonade, Mango Orange, and Grapefruit.   After the execution of the Consent Agreement, and in express reliance upon Defendant's consent for the Plaintiff's use of the SPINDRIFT mark and its use and registration of the SPINDRIFT SODA mark, Plaintiff continued to invest substantial resources and capital into the development of the SPINDRIFT brand, the expansion of its products to include new soda and seltzer flavors, and the expansion of its market throughout the country.

21.     In 2011, Plaintiff added two new soda products – Cranberry Raspberry, and Half & Half (1/2 lemonade, 1/2 tea).

22.     In 2012, Plaintiff introduced its unsweetened seltzer water products, adding its first three Spindrift Seltzer flavors – Raspberry Lime, Lemon, and Tangerine.

23.     In 2013, Plaintiff introduced a new soda product – Pomegranate.

24.     Also in 2013, and as its business continued to grow, Plaintiff introduced a new website under the domain name "Spindrift Fresh."  *See, e.g., www.spindriftfresh.com.*  Plaintiff included the term "fresh" for descriptive purposes only as a way to describe Plaintiff's product

line generally, as its drinks are manufactured with entirely fresh ingredients.  Defendant was fully aware of Plaintiff's use of the domain name, and in fact, had communicated by email with Plaintiff at that address.  At no time did Defendant object to Plaintiff's use of the name "Spindrift Fresh" on its website or otherwise.

25.     As its business expanded, Plaintiff provided notice to Defendant of its new markets and product lines.  For example, in 2013, shortly after Plaintiff introduced its new seltzer water products, and in connection with a west coast sales trip, Plaintiff's President, William Creelman, visited Defendant's Oregon headquarters and met with Mr. Ormond Galvin and other of Defendant's partners for the better part of an entire day.  During this meeting, Mr. Creelman fully described Plaintiff's full product line, and its then-existing and prospective uses of the SPINDRIFT and SPINDRIFT SODA marks.  Mr. Creelman also provided a detailed update on Plaintiff's entire product line, including a review of all of Plaintiff's labels, marketing and advertising materials, as well as its expanding geographical markets.  At no time during this meeting, or at any point thereafter, did Defendant object in any way to Plaintiff's use of the SPINDRIFT or SPINDRIFT SODA marks, to Plaintiff's soda or seltzer water products, to any of Plaintiff's products, labels, advertisements, or other marketing materials, or to Plaintiff's west coast, or other sales, efforts.

26.     At or around this time, Plaintiff also notified Defendant that it was exploring product expansion into the kids' juice market, and specifically identified kids juice pouches and/or fresh kids flavored waters as potential future products.  Defendant raised no objection to that proposed product expansion.

27.     In 2014, Plaintiff discontinued its Pomegranate soda product, and introduced a new soda product, Ginger Beer.  This product, much like Ginger Ale, contains no alcohol and is

made simply from freshly pressed ginger and fresh squeezed lemon juice, sparkling water, and cane sugar.

28.     In 2015, Plaintiff discontinued the Tangerine seltzer product, and introduced a new Grapefruit seltzer and a new Cucumber seltzer product.

29.     The period of growth experienced by Plaintiff, in express reliance upon the Consent Agreement agreed to by the parties, came at considerable investment, cost and expense. All in all, the capital contributions and other investments made by Plaintiff to date in reliance upon the Consent Agreement total well in excess of $5,000,000, and continue to grow.

30.     Despite Defendant's long-standing express and/or implied consent to Plaintiff's use of the SPINDRIFT, SPINDRIFT SODA and other SPINDRIFT formative marks, Defendant delivered a cease and desist letter to Plaintiff on May 28, 2015.  Through this letter, Defendant objected for the first time to Plaintiff's use of the SPINDRIFT mark.  The letter specifically alleges that (a) Plaintiff is improperly using the SPINDRIFT mark in ways that are counter to the spirit of the Consent Agreement, and (b) Plaintiff's marketing, labeling, sales and distribution efforts since 2010 "have created *numerous instances* of consumer confusion." (emphasis added).  A true and accurate copy of Defendant's May 28, 2015 cease and desist letter is attached hereto as Exhibit C.

31.     In the cease and desist letter, Defendant demands that Plaintiff stop using the previously consented-to SPINDRIFT mark (other than with SPINDRIFT SODA), and change all of its labeling, marketing, advertising and other materials to differentiate its products from Defendant's products.  Defendant also proposed that Plaintiff consider resolving this dispute by (a) rebranding all of its products, (b) licensing the SPINDRIFT mark from Defendant, or (c) purchasing the SPINDRIFT CELLARS mark from Defendant.  See Exhibit C.

32.    In the cease and desist letter, Defendant alleges improperly that the Consent Agreement only permits Plaintiff to use the trademark "SPINDRIFT SODA" on its product labels and advertising, and that Plaintiff's use of the name "SPINDRIFT" on its labels, advertisements, and other marketing materials violates the Consent Agreement.   Defendant makes these allegations despite the fact that Defendant expressly consented to the use of the SPINDRIFT mark identified in the Consent Agreement and exhibits thereto.  See Exhibits B and C.

33.    In the cease and desist letter, Defendant alleges improperly that Plaintiff has used the name "SPINDRIFT" for purposes of promoting and advertising "non-agreed to uses," including use that: (i) *implies* Plaintiff is selling more than just soda; (ii) *implies* that Plaintiff is selling alcoholic beverages; (iii) *implies* that Plaintiff is selling an alcoholic mixer; and (iv) targets a geographical area which is a major market for Defendant (California).  Defendant fails, however, to allege that Plaintiff was selling, advertising and marketing an *actual* alcoholic beverage or wine cooler, which activity is prohibited by the Consent Agreement.  See Exhibits B and C.

34.    In the cease and desist letter, Defendant alleges improperly that Plaintiff's marketing of its SPINDRIFT soda products at "wine-related events" violates the Consent Agreement.  Defendant, however, neither defines so-called "wine-related" events, nor identifies specific language within the Consent Agreement that prohibits Plaintiff from marketing its soda products at such events.  See Exhibits B and C.

35.    In the cease and desist letter, Defendant alleges improperly that Plaintiff's marketing of its SPINDRIFT soda products in east coast markets where Defendant distributes its wines violates the Consent Agreement.  Defendant, however, fails to recognize that Plaintiff

(itself an east coast company) has been marketing its products on the east coast for as long as it has been in existence (and for as long as Defendant has known Plaintiff, without objection). Defendant also fails to define these so-called "east coast markets" and fails to identify specific language within the Consent Agreement that prohibits Plaintiff from marketing its soda products in such markets. The plain terms of the Consent Agreement contain no geographical restriction on Plaintiff's use of the SPINDRIFT or SPINDRIFT SODA marks. See Exhibits B and C.

36.    In the cease and desist letter, Defendant alleges improperly that Plaintiff's marketing of its SPINDRIFT soda products in west coast markets where Defendant distributes its wines violates the Consent Agreement. Defendant also fails to define these so-called "west coast markets" and fails to identify specific language within the Consent Agreement that prohibits Plaintiff from marketing its soda products in such markets. The plain terms of the Consent Agreement contain no geographical restriction on Plaintiff's use of the SPINDRIFT or SPINDRIFT SODA marks. See Exhibits B and C.

37.    In the cease and desist letter, Defendant alleges improperly that Plaintiff's marketing and distribution of products that could be used as so-called "mixers" for alcoholic beverages violates the Consent Agreement. Defendant, however, fails to recognize that any and all soda and juice products in the market, including all SPINDRIFT and SPINDRIFT SODA products of which Defendant had prior knowledge, potentially could be mixed with alcoholic beverages for consumption by consumers. Defendant also fails to identify the language in the Consent Agreement that prohibits Plaintiff from selling products under the SPINDRIFT or SPINDRIFT SODA marks that could be used as alcoholic mixers. See Exhibits B and C.

38.    At all times since its execution of the Consent Agreement, Plaintiff has fully satisfied the condition that its SPINDRIFT and SPINDRIFT SODA products remain non-

alcoholic and never migrate into Defendant's competitive marketplace as wine coolers or any other type of alcoholic beverage, and there is no allegation to the contrary in Defendant's cease and desist letter or otherwise.

39.     At all times since its execution of the Consent Agreement, Plaintiff has fully satisfied and complied with the condition that its SPINDRIFT and SPINDRIFT SODA labels and other marketing materials and branding remain distinctive from Defendant's labels, marketing and branding, and there is no allegation to the contrary in Defendant's cease and desist letter or otherwise.

40.     Surprised to have received a complaint about uses of the SPINDRIFT mark that had been known and agreed to by Defendant for years, and critical of the claim that there could be any credible instance of consumer confusion, Plaintiff requested all materials relating to the alleged "numerous instances" of confusion so that it could evaluate the materiality and integrity of this assertion.  In response, Defendant sent Plaintiff what it claims to be specific examples of customer confusion.  Attached hereto as Exhibit D is a true and accurate copy of Defendant's June 23, 2015 letter to Plaintiff, with attachments.

41.     Contrary to Defendant's assertion of "numerous instances" of consumer confusion, the documents provided by Defendant contain only an isolated, unverifiable text message purportedly sent in April 2015 inquiring as to whether Defendant is now "making juice."  See Exhibit D.  The remainder of the documentation is comprised exclusively of photographs of SPINDRIFT marketing tables at various trade shows, retail outlets, and industry events.  When pressed for more specific evidence of consumer confusion beyond the lone April 2015 text message, Defendant either refused or was unable to provide any additional information.  See Exhibit D.

42.     Defendant alleged that other customers had inquired during wine tastings about whether Defendant was now in the juice business, but these claims were unsupported by documentary evidence and otherwise were neither specific nor verifiable.

43.     Based on the paucity of evidence provided by Defendant, Plaintiff did not believe that there had been any actual consumer confusion and did not believe that it violated the Consent Agreement.   Nevertheless, Plaintiff expressed to Defendant a willingness to consider options to address any specific, demonstrable consumer confusion, if any, alleged by Defendant.

44.     Defendant, however, was not interested in negotiating reasonable terms.   Rather, on July 13, 2015, Defendant presented Plaintiff with two licensing options: (a) a five (5) year (term) license for a royalty payment of at least $750,000 per term, or (b) a perpetual license for an up-front royalty payment of $2,000,000.   Defendant also threatened to initiate immediate administrative or legal action to cancel Plaintiff's federal trademark registration for the mark SPINDRIFT SODA, should a license agreement not be reached by August 31, 2015.   A true and accurate copy of the July 13, 2015 letter is attached hereto as Exhibit E.

45.     Despite this threat, Plaintiff continued to attempt to negotiate an amicable resolution.   For example, on July 23, 2015, Plaintiff notified Defendant that it was declining the proposed licensing options and instead offered to implement a rebranding strategy, provided that Defendant was agreeable to an eighteen (18) month period for Plaintiff to phase out its use of the SPINDRIFT marks.   A true and accurate copy of Plaintiff's July 23, 2015 email to Defendant is attached hereto as Exhibit F.

46.     On July 28, 2015, Defendant rejected that offer and insisted that Plaintiff immediately cease and desist its use of the SPINDRIFT marks.   A true and accurate copy of Defendant's July 28, 2015 email to Plaintiff is attached hereto as Exhibit G.

47.     Thereafter, on July 29, 2015, Plaintiff again reiterated that a phase out period was necessary and appropriate (and in any event would likely be shorter than litigation threatened by Defendant), and again asked Defendant to offer a realistic counterproposal to the 18 month phase out.  A true and accurate copy of the July 29, 2015 email is attached hereto as Exhibit H.

48.     By email dated July 30, 2015, Defendant responded that 18 months was not an appropriate phase out period, and declined to address the matter further.  A true and accurate copy of the July 30, 2015 email is attached hereto as Exhibit I.

49.     The following day, Plaintiff asked Defendant what it considered an appropriate period of time for Plaintiff to phase out its use of the SPINDRIFT marks.  Defendant failed and refused to respond to this request.  A true and accurate copy of the July 31, 2015 email is attached hereto as Exhibit J.

50.     Finally, by letter dated November 11, 2015, Plaintiff again reached out to Defendant and requested a face-to-face meeting to explore a mutually agreeable compromise.  In this letter, Plaintiff emphasized that the Consent Agreement specifically permitted Plaintiff to make commercial use of the SPINDRIFT mark, a copy of which was attached as a specimen and exhibit to the Consent Agreement.  Plaintiff also emphasized that at all relevant times since the parties executed the Agreement, Plaintiff had consistently used that mark in the manner originally contemplated under the Agreement.  A true and accurate copy of the November 11, 2015 letter is attached hereto as Exhibit K.

51.     Defendant simply ignored Plaintiff's November 11, 2015 letter, refusing to address Plaintiff's position with respect to the express consent and use contemplated by the Consent Agreement, and otherwise ignoring its obligations therein to work with Defendant in good faith.

52.     Rather than continue to explore reasonable settlement options, Defendant filed a cancellation action with the TTAB on November 17, 2015, revoking its consent and seeking to cancel Plaintiff's federal registration for the mark SPINDRIFT SODA.  A true and accurate copy of the November 17, 2015 cancellation action is attached hereto as Exhibit L.

53.     Defendant's TTAB cancellation action is meritless, as Plaintiff has at all times fully complied with the provisions of the Consent Agreement.  For nearly five years, Plaintiff relied on the rights and obligations set forth in the Consent Agreement  and continued to invest millions of dollars on its branding and business and marketing strategies.  Plaintiff kept Defendant fully informed of all material developments in its product lines and marketing strategies, to which Defendant never objected or raised any substantive concerns.  Despite this, Defendant now demands, without justification, that Plaintiff completely abandon or change its mark and brand identity, despite the fact that the very mark Defendant now complains about is precisely the mark that the Defendant authorized the Plaintiff to use under the Consent Agreement.

### COUNT I
### (BREACH OF CONTRACT)

54.     Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 53 above as if fully set forth herein.

55.     Plaintiff and Defendant executed a valid and binding Consent Agreement pursuant to which Defendant was to provide its continuous consent to Plaintiff's use of the SPINDRIFT mark and use and registration of the SPINDRIFT SODA mark.

56.     Plaintiff, at all times, fully satisfied each of its obligations under the Consent Agreement.

57.     Defendant, by its conduct, including without limitation the initiation of the cancellation proceedings with the TTAB, has breached the Consent Agreement.

58.     Defendant's conduct has caused and will continue to cause Plaintiff damages in an amount to be determined at trial.

## COUNT II
### (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

59.     Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 58 above as if fully set forth herein.

60.     Plaintiff and Defendant entered into a Consent Agreement for Plaintiff's use of the mark SPINDRIFT and for the use and federal registration of the mark SPINDRIFT SODA. .

61.     The Consent Agreement expressly recognizes the there is no likelihood that consumers have been or will be confused by the use of the SPINDRIFT mark, the use and registration of the SPINDRIFT SODA mark and the SPINDRIFT CELLARS mark, respectively, examples of which were attached to and expressly contemplated by the Consent Agreement

62.     The Consent Agreement between the parties contains am implied covenant of good faith and fair dealing providing that neither party shall do anything that will have the effect of destroying the right of the other party to receive the fruits of the Agreement.

63.     Defendant, by its conduct, has breached the implied covenant of good faith and fair dealing contained in the Consent Agreement.

64.     Defendant's conduct has caused and will continue to cause harm to Plaintiff in an amount to be determined at trial.

## COUNT III
### (SPECIFIC PERFORMANCE)

65.     Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 64 as if fully set forth herein.

66.     Plaintiff and Defendant entered into a valid and binding Consent Agreement, pursuant to which Defendant expressly consented to Plaintiff's use of the SPINDRIFT mark and to Plaintiff's use and registration of the SPINDRIFT SODA mark, subject to certain conditions.

67.     Plaintiff at all times has fully and completely satisfied its obligations under the Consent Agreement and has not violated the conditions set forth in the Consent Agreement.

68.     Defendant, by its conduct, has breached the Consent Agreement by improperly and unjustifiably revoking the consent provided therein, by initiating cancellation proceedings before the TTAB.

69.     For all of these reasons, as more fully articulated above, Plaintiff is entitled to an order from this Court requiring Defendant to specifically perform its obligations under the Consent Agreement and to withdraw its Cancellation Petition filed with the TTAB.

## COUNT IV
### (ESTOPPEL)

70.     Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 69 as if fully set forth herein.

71.     Plaintiff, to its detriment, reasonably relied upon the consent and other rights and obligations set out in the Consent Agreement between the parties.

72.     Due to its conduct, acts and omissions, Defendant is estopped from denying Plaintiff the consent and other rights and obligations set out in the Consent Agreement between the parties.

## COUNT V
### (VIOLATION OF M.G.L. C. 93A, §§2 and 11)

73.     Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 72 above as if fully set forth herein.

74.     Defendant is engaged in trade or commerce within the meaning of M.G.L. c. 93A.

75.     Defendant, by the conduct more fully described above, has engaged in unfair and deceptive conduct in violation of M.G.L. c. 93A, §§2 and 11.

76.     Defendant's conduct was willful and knowing.

77.     The unfair and deceptive conduct and acts described herein occurred primarily and substantially in Massachusetts

78.     As a direct and proximate result of Defendant's unfair and deceptive conduct, Plaintiff has suffered and will continue to suffer harm in an amount to be determined at trial.

## REQUESTED RELIEF

WHEREFORE, Plaintiff SPINDRIFT Beverage Co., Inc. respectfully requests that this Court enter the following relief:

A.     enter judgment for Plaintiff and against Defendant on Counts I and II, above, awarding damages in an amount to be determined at trial;

B.     enter judgment for Plaintiff and against Defendant on Count V above, awarding damages in an amount to be determined at trial, together with interest, costs and attorneys' fees incurred in connection with this action, and doubling or trebling said damages as a result of Defendant's willful and knowing violation of M.G.L. c. 93A;

C.     enter judgment for Plaintiff and against Defendant on Counts III and IV above, requiring, among other things, that Defendant specifically perform its obligations under the

Consent Agreement, and/or  declaring that Defendant is estopped from revoking its consent and

otherwise denying Plaintiff the rights and obligations set out in the Consent Agreement; and

D.      order such further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted,

Plaintiff Spindrift Beverage Co., Inc.,
By its counsel,


By: /s/ David M. Ianelli
David M. Ianelli, BBO # 567274
dianelli@mccarter.com
Nicholas Allen, BBO # 663409
nallen@mccarter.com
McCARTER & ENGLISH, LLP
265 Franklin Street
Boston, MA  02110


Dated: December 21, 2015